IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| UNITED VAN LINES, LLC, | § |  |
| --- | --- | --- |
| *Plaintiff* | § |  |
|  | § | SA-23-CV-00186-XR |
| -vs- | § |  |
|  | § |  |
| BARON CLARK, | § |  |
| *Defendant* | § |  |

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

On this date, the Court considered Plaintiff United Van Lines, LLC's Motion for Default Judgment against Defendant Baron Clark. ECF No. 9. After careful consideration, Plaintiff's Motion is **GRANTED.**

## BACKGROUND

Plaintiff United Van Lines, LLC commenced this case by filing its Complaint on February 13, 2023, alleging a claim against Defendant Baron Clark for breach of an interstate transportation contract pursuant to 49 U.S.C. §§ 13702 and 13706. ECF No. 1 at 3–4.

Defendant entered a contract with Plaintiff on August 25, 2021 (the "Contract" or "Bill of Lading"), to ship Defendant's personal property and household goods from San Antonio, Texas to Bartlett, Tennessee. *Id*. at 2; *see* ECF No. 1-1 (Bill of Lading). Section 4 of the Bill of Lading, which names the "Customer," Clark, as both the consignee and consignor, specifies that he is liable for all freight charges:

> Customer, Consignor upon tender of the shipment to Carrier, and the Consignee upon acceptance of delivery of shipment from Carrier, shall be jointly and severally liable for all freight and other charges accruing on account of a shipment in accordance with applicable tariffs or contract rate schedules, including all sums advanced or disbursed by Carrier on account of such shipment. The owner of the goods and/or beneficiary of the services acknowledges he/she remains primarily liable for payment[.]

ECF No. 1-1 at 4. Plaintiff alleges that it performed its obligations under the Contract by delivering Defendant's personal property and household goods to Tennessee on September 28, 2021, but that Defendant failed to pay the interstate tariff transportation charges, totaling $10,992.35. *Id*. at 3–4.

On February 13, 2023, Plaintiff filed this action, alleging that Defendant breached the Bill of Lading by failing to pay the required tariffs under 49 U.S.C. §§ 13702 and 13706. *See* ECF No. 1. After several unsuccessful attempts at service, Plaintiff moved for substituted service. ECF No. 4. The Court entered granted the motion, permitting Plaintiff to serve Defendant by leaving a true copy of the Summons, the Complaint, and the Order, on the front door of Defendant's last known address, located at 3671 Planters View Road in Memphis, Tennessee, with additional service by first class regular mail.[1] ECF No. 5. Thereafter, Plaintiff filed an affidavit of service indicating that Defendant had been served in accordance with the Order on May 4, 2023. ECF No. 6.

Defendant has failed to file an answer or other responsive pleading, request an extension of time in which to do so, or otherwise appear in this action, and the time in which to do so has expired. Accordingly, on June 29, 2023, the Clerk of Court entered default against Defendant. ECF No. 10. On the same day, Plaintiff filed a motion for default judgment in the total amount of $15,499.10, representing $10,992.35 in damages and $4,506.75 in attorney's fees. ECF No. 9. Defendant has not responded to the motion, and the time in which to do so has expired.

## DISCUSSION

**I.    Legal Standard**

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the

---

[1] Defendant's last known address is the same address in Tennessee to which his belongings were delivered in 2021. Compare ECF No. 1-1 at 1 with ECF No. 5 at 4.

default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

## II.     Analysis

### A.     Jurisdiction

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

The Court has subject matter jurisdiction over this case because Plaintiff's breach-of-contract claim is premised on a federally required tariff under 49 U.S.C. § 13702 and "thus aris[es] under an[] Act of Congress regulating commerce." [2] 28 U.S.C. § 1337(a). A number of courts have stated categorically that, since the deregulation of the interstate trucking industry in 1995, "[s]ubject-matter jurisdiction over state-law contract-breach cases in the freight business no longer exists." *GMG Transwest Corp. v. PDK Labs, Inc.*, No. 07-CV-2548 TCP ARL, 2010 WL 3718888, at *2 (E.D.N.Y. Sept. 13, 2010) (collecting cases). This case, however, falls within a narrow

---

[2] Although the Complaint references both § 13702 and § 13706, Plaintiff's claim does not appear to implicate § 13706. Section 1706 describes liability "for additional rates that may be found to be due after delivery," when the consignee is someone "*other than* the shipper or consignor." 49 U.S.C. § 13706(a) (emphasis added). Under Title 49, the "consignee" is defined as "the person named in a bill of lading as the person to whom the goods are to be delivered," and the "consignor" is defined as "the person named in a bill of lading as the person from whom the goods have been received for shipment." 49 U.S.C. § 80101. A "shipper" is defined as "any person who—(A) is the shipper, consignor, or consignee of a household goods shipment; (B) is identified as the shipper, consignor, or consignee on the face of the bill of lading; (C) owns the goods being transported; and (D) pays his or her own tariff transportation charges." 49 U.S.C. § 13102. Where, as here, "the consignee is the intended recipient and beneficial owner of the shipment, it is liable for rates billed at the time of delivery, as well as additional rates that may be found to be due after delivery." *GMG Transwest Corp. v. PDK Labs, Inc.*, No. 07-CV-2548 TCP ARL, 2010 WL 3718888, at *6 (E.D.N.Y. Sept. 13, 2010). Accordingly, any distinctions that § 13706 draws between the consignee and the beneficial owner are immaterial here.

3

exception to the Interstate Commerce Commission Termination Act ("ICCTA") because it involves the transportation of household goods. *See On Track Transp., Inc. v. Lakeside Warehouse & Trucking Inc.,* 245 F.R.D. 213, 225 (E.D. Pa. 2007).

Before the ICCTA, "all shippers of all types of goods interstate were required to file tariffs with the Interstate Commerce Commission ('ICC')[.]" *Mayflower Transit, LLC v. Interra Indus., LLC*, No. CIV.A.07-5963, 2008 WL 2559358, at *2 (D.N.J. June 26, 2008). When a carrier sought to recover unpaid freight charges due under a filed tariff, "federal jurisdiction unquestionably was present under 28 U.S.C. § 1337 . . . [because] the carrier's claim was 'predicated on the filed tariff'" *On Track Transp.*, 245 F.R.D. at 224 (quoting *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983)) (citations and alteration marks omitted). *Thurston* confirmed that claims by carriers for unpaid freight charges arose under the Interstate Commerce Act ("ICA") rather than state contract law: "The [ICA] requires carrier[s] to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment. Their duty and obligation grow out of and depend upon that act." *Thurston*, 460 U.S. at 534–35 (citing *Louisville & Nashville R.R. Co. v. Rice*, 247 U.S. 201, 202 (1918)). As one court later explained, "[a] carrier was obligated to collect its full fee from each shipper" because "failure to recover unpaid charges due under a tariff from one shipper would be the equivalent of showing unlawful discrimination in rates," in violation of the ICA. *On Track Transp.,* 245 F.R.D. at 224. Thus, regardless of the rate stated in the parties' shipping contract, the carrier was required to collect the filed rate: "[a]s to interstate shipments[,] there can be no question that . . . the parties are held to the responsibilities imposed by the federal law, to the exclusion of all other rules of obligation. *Rice*, 247 U.S. at 202 (quotations and citations omitted)); *see also Thurston*, 460 U.S. at 535 ("A carrier's claim is, of necessity, predicated on the tariff—not an understanding with the shipper.").

In 1995, Congress abolished the ICC and repealed provisions requiring filed tariffs and prohibiting preferential treatment for all types of goods. *Munitions Carriers Conf., Inc. v. United States*, 147 F.3d 1027, 1029 (D.C. Cir. 1998). "Congress then enacted a new statutory scheme under which carriers were required to file tariffs only for the transportation of household goods, as to which preferential treatment is still prohibited." *Id.* (citing 49 U.S.C. § 13704(a)(2)); *see also Mayflower Transit, LLC v. Colvin*, No. CV 11-663, 2011 WL 4975793, at *3 (E.D.N.Y. Sept. 20, 2011) ("Section 49 U.S.C § 13702 of the ICCTA specifically requires the use of published shipping tariffs for the transportation of household goods."). Thus, courts have held that, after 1995, a carrier seeking to recover unpaid freight charges "can predicate federal jurisdiction under § 1337" only in the "narrow situation" in which the carrier seeks to recover "a tariff filed with the [Surface Transportation Board] for the transportation of household goods." *On Track Transp.*, 245 F.R.D. at 225; *see also Interra Indus.*, 2008 WL 2559358, at *3 n.1 (noting that § 13702 is one of the few statutory provisions "found to create a cause of action under 28 U.S.C. § 1337"). Otherwise, a carrier's action to recover amounts due from a shipper is simply a state-law contract action. *On Track Transp.*, 245 F.R.D. at 225.

Plaintiff published the required tariff and included a "Notice of Availability of Published Tariff" in the Bill of Lading. ECF No. 1-1 at 4. Plaintiff has also established that the goods that it transported were household goods. ECF. No. 1 at 1. Because this case involves a federally filed tariff for the transportation of household goods, the Court finds that Plaintiff has properly invoked 49 U.S.C. § 13702 and this Court's subject matter jurisdiction under 28 U.S.C. §§ 1331. *See Mayflower Transit, L.L.C. v. Bruchwalski*, No. 12-CV-02509-WYD-BNB, 2013 WL 3662650, at

\*2 (D. Colo. July 12, 2013) (finding federal subject matter jurisdiction for claim under 49 U.S.C. § 13702 pursuant to both 28 U.S.C. § 1331 and § 1337).[3]

This Court also has personal jurisdiction over Defendant, even though he is no longer domiciled in Texas. Courts can exercise personal jurisdiction over out-of-state defendants if permitted by the state's long-arm statute and there is not a conflict with federal due process. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).[4] Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id*.

---

[3] This case also invokes this Court's subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Such federal-question jurisdiction extends to cases in which a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988). The latter test is met where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). To create federal question jurisdiction, the complaint must establish that "federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006); *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009). Here, as in *Thurston*, Plaintiff's "claim is, of necessity, predicated on the tariff—not an understanding with the shipper." 460 U.S. at 535. Regardless of the language in the parties' contract, Plaintiff is obligated to collect the federally filed tariff because the contract involved the transportation of household goods. *See* ECF No. 1 at 3–4 (citing 49 U.S.C. § 13702). Thus, Plaintiff's right to relief necessarily depends on the resolution of a substantial federal question and arises under this Court's federal-question jurisdiction.

[4] Texas's long-arm statute specifically provides that, in addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
    (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
    (2) commits a tort in whole or in part in this state; or
    (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
TEX. CIV. PRAC. & REM. CODE § 17.042.

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, the Court is satisfied that Defendant's direct and purposeful contacts with the state of Texas give rise to specific jurisdiction in this forum. Defendant purposely availed himself of the benefits and protections of the state of Texas by soliciting Plaintiff's moving services when he was a citizen of Texas and contracting for the transportation of his household goods and personal property from Texas to Tennessee. *See* ECF No. 1-1 at 1–2. Moreover, a substantial part of the contract giving rise to this action was performed in Texas—Plaintiff picked up Defendant's goods in San Antonio and presumably transported them through Texas on the route to Tennessee. *See* ECF No. 9 at 3–4. Given this history of contacts, Defendant should have reasonably anticipated being haled into court in the state of Texas. *Ruston Gas Turbines*, 9 F.3d at 419.

The Court further concludes that exercising jurisdiction over Defendant would not offend traditional notions of fair play or equal justice. In making this determination, courts consider a number of factors related to fairness: "(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)).

Considering these factors alongside Defendant's history of contacts with the state of Texas, there is no reason to believe that the Court's exercise of jurisdiction over him would be unfair.[5] *Coach, Inc. v. Pro Nail & Beauty Supply*, No. 5:16-CV-327-DAE, 2016 WL 9450446, at *4 (W.D. Tex. Dec. 27, 2016) ("Any inconvenience in litigating in a foreign state is not extraordinary in the federal courts, and [the defendant] has offered no facts which distinguish this case from the norm."). Moreover, the state of Texas has an interest in ensuring that contracts made within the state are upheld. *See XPEL Techs. Corp. v. Maryland Performance Works Ltd.*, No. SA-05-CA-0593, 2006 WL 1851703, at *8 (W.D. Tex. May 19, 2006) ("Texas has an interest in enforcing contracts that are to be interpreted under Texas law."); *see also MDI, Inc. v. JenTek Integrated Sys., Inc., No.* SA-07-CV-289-WRF, 2007 WL 1512022, at *4 (W.D. Tex. May 21, 2007) ("The forum state of Texas, however, has a great interest in having the case within its bounds as it no doubt would like to protect the business of the corporations doing business in Texas."); *Daynard*

---

[5] Because Plaintiff has made a prima facie showing of minimum contacts, Defendant bears the burden "to show that the Court's exercise of jurisdiction would not comport with notions of fair play and substantial justice." *Metis Int'l, L.L.C. v. Ace INA Holdings, Inc.*, No. CIV.A.SA04CA-1033-XR, 2005 WL 1072587, at *4 (W.D. Tex. May 6, 2005) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Given Defendant's default in this case, he has clearly failed to offer any evidence that the Court's exercise of jurisdiction would be unreasonable or burdensome.

*v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 188 F. Supp. 2d 115, 122 (D. Mass. 2002) ("Each state has a strong interest in enforcing contracts[.]"). Thus, the Court concludes that it has personal jurisdiction over Defendant.

Finally, the Court finds that Plaintiff has properly effected service of process on Defendant in accordance with Texas law. "[S]ervice of process . . . initiates a defendant's obligations in a civil suit[.]" *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Pursuant to the Federal Rules of Civil Procedure, the plaintiff bears the burden of ensuring that the defendant is properly served with a copy of the summons and the complaint within ninety days of filing the complaint. *See* FED. R. CIV. P. 4(c)(1), (m). The Federal Rules also provide for service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). Because this Court sits in the Western District of Texas, it looks to Texas authority when evaluating whether a Defendant has been adequately served.

Texas Rule of Civil Procedure 106(a) provides two methods for effecting personal service on a defendant: (1) by personal delivery, or (2) by registered or certified mail, return receipt requested. TEX. R. CIV. P. 106(a)(1)–(2). If service by one of the two methods provided in Rule 106(a) fails, a court may, upon a motion supported by a proper affidavit, authorize substitute service pursuant to Texas Rule of Civil Procedure 106(b). Substitute service may be effected: (1) by leaving a copy of the documents with anyone over sixteen years of age at the location of the defendant's usual place of business or usual place of abode as specified by affidavit, or (2) in any

other manner deemed to be reasonably effective to give the defendant notice. TEX. R. CIV. P. 106(b)(1)–(2).

Here, Plaintiff filed suit on February 13, 2023. *See* ECF No. 1. After attempting personal service three times, and failing to effectuate service, Plaintiff moved for substituted service on April 28, 2023, which the Court granted. ECF No. *Id*. at 5. Per the Court's order, on May 4, 2023, Plaintiff placed the summons, original complaint, and order for granting substituted service on the front door of Defendant's last known address, with additional service by first class regular mail. *See* ECF No. 6. The Defendant was therefore timely and properly served.

### B. Liability

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller *et al.*, FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F.

App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

Plaintiff's sole cause of action is a claim for breach of contract under 49 U.S.C. § 13702. ECF No. 1 at 2. Courts have looked to state-law elements for breach of contract in addressing breach-of-contract claims brought under section 13702. *See Colvin*, 2011 WL 4975793, at *3. "Under Texas law, the elements of a breach of contract claims are (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

By failing to answer the Complaint, Defendant has admitted that, on August 25, 2021, he contracted with Plaintiff for the transportation of his personal property and household goods from San Antonio, Texas to Bartlett, Tennessee in exchange for being "primarily liable for payment" of "all freight and other charges," including Plaintiff's published tariff in the amount of $10,992.35. ECF No. 1 at 2–3. Defendant has further admitted that Plaintiff performed its obligations under the Bill of Lading by delivering his household goods and personal property to Defendant in Bartlett, Tennessee on September 28, 2021. *Id.* at 3; *see Crop Prod. Servs., Inc. v. Vaculin*, No. 6:15-CV-00100, 2016 WL 3223323 (W.D. Tex. Feb. 16, 2016) (holding performance was tendered by the plaintiff when the plaintiff delivered the goods under the agreement). Finally, Defendant has admitted that he breached the Contract by failing to pay the outstanding freight charges, causing damages to Plaintiff in the amount of the unpaid tariff. *Id.* at 4; *see Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied) ("A breach occurs when a party fails

to perform a duty required by the contract."). These allegations, taken as true, make out a claim for breach of contract against Defendant.

### C. Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Usually, non-liquidated damages are proven at a hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) for the general rule that non-liquidated damages in default judgment are not awarded without evidentiary hearing). However, where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is not necessary. *Id.* The discretionary nature of whether to conduct a hearing is supported by the express language in the Federal Rules themselves. *See* FED. R. CIV. P. 55(b)(2) ("The court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to: . . . (B) determine the amount of damages[.]").

Plaintiff seeks $10,992.35 in damages and $4,506.75 in attorney's fees. ECF No. 1 at 4; ECF No. 9 at 6–7. Because the Court exercises its discretion to rely on the detailed affidavit provided in support of Plaintiff's claim for damages (ECF No. 9-1), an evidentiary hearing will not be necessary to calculate the amount of damages in this case. *James*, 6 F.3d at 310; FED. R. CIV. P. 55(b)(2).

### 1. Breach of Contract Actual Damages

Plaintiff seeks $10,992.35 in actual damages, stemming from the unpaid freight charges that Defendant agreed to pay in the Bill of Lading. *See* ECF No. 9 at 6–7. This amount requested

in Plaintiff's motion is identical to the sum demanded in the Complaint—and to the freight charges identified in the Bill of Lading. *See* FED. R. CIV. P. 54(c); ECF No. 1 at 4; ECF No. 1-1 at 2. Although Plaintiff performed its obligation of transporting Defendant's household goods, Defendant has failed to pay the outstanding transportation charges. ECF No. 9-1 at 2. Accordingly, the Court awards $10,992.35 in actual damages to Plaintiff.

### 2. Recovery of Costs and Attorney's Fees

Plaintiff's motion seeks an award of attorney's fees in the amount of $4,506.75 based on the hourly time for prosecution of this action and an award of full costs. *See* ECF No. 9 at 7–9; ECF No. 9-4 (proposed order). Plaintiff is entitled to fees for its successful breach-of-contract claim . *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8); *First Nat'l Bank of Pa. v. Oceanic Protective Servs.*, LLC, No. SA-19-CV-141-XR, 2019 WL 2329323 (W.D. Tex. May 31, 2019).

In evaluating a request for reasonable attorney's fees, courts generally use the "lodestar" amount, multiplying the number of hours reasonably spent on the litigation by an appropriate hourly rate in the community for such work. *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 547 (1986). The Supreme Court has contrasted the lodestar method with the method previously set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). [6] *See Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 550–54 (2010). Since *Perdue* indicated a "strong preference" for the lodestar method over the Fifth Circuit's *Johnson* factors, "the Fifth Circuit has subsequently treated the *Johnson* factors as a complement to the lodestar method." *Alex*

---

[6] Those "*Johnson* factors" include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the desirability of the case; (11) the nature and length of the professional relationship with the client; and (12) similar awards in other cases. *Johnson*, 488 F.2d at 717–19.

*v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 624 (W.D. Tex. 2015) (citing *Random v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 n.17 (5th Cir. 2013)). The burden is on the applicant to establish the reasonableness of the award. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

Plaintiff has submitted the affidavit of Emileigh Hubbard and detailed billing records to establish the reasonable and necessary attorney's fees.[7] ECF No. 9-3, Hubbard Decl. The total cost for services billed through The affidavit indicates that, as of May 2023, Plaintiff had incurred over 15 hours of attorney and paralegal time: 4.7 hours at a rate of $185 for shareholders Emileigh Hubbard and Vic Henry, 4.1 hours at a rate of $165 for associate attorneys Davinder Jassal and Nathan Villareal, and 6.5 hours at a rate of $110 for paralegals Lisa Meredith and Sabrina Moreno, for a total of $3,306.75. *Id.* ¶¶ 10–12. In addition, Ms. Hubbard anticipated billing an additional $1,200 (approximately 6.5 hour) for services concerning the preparation of Plaintiff's motion for default judgment and Ms. Hubbard's supporting affidavit, for a total of $4,506.75. *Id.* ¶ 13.

Plaintiff appears to concede that the *Johnson* factors do not warrant any upward adjustment of this award. *See* ECF No. 9-3, Hubbard Decl. ¶ 17 (asserting that "the time and labor required, the novelty and difficulty of the questions involved [, and] . . . [t]he skill required to perform the legal services in this matter" were "average"). Likewise, the Court finds no reason to believe that a downward adjustment is appropriate.

Based upon the affidavit and the time spent preparing this case, the Court awards Plaintiff its reasonable attorney's fees in the amount of $4,506.75.

---

[7] The Court can use such evidence in determining the reasonableness of attorney's fees. *See Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment (ECF No. 9) is **GRANTED**. Plaintiff is awarded a total amount of $15,499.10, representing $10,992.35 in actual damages and $4,506.75 in attorney's fees, and costs.

A final judgment in favor of Plaintiff shall issue in accordance with Rule 58. Plaintiff is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the entry of the Judgment. *See* Local Rule 54.

It is so **ORDERED**.

**SIGNED** this 8th day of August, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE